434 A.2d 1205

COMMONWEALTH of Pennsylvania, Appellee,

v.

Regina ARMSTRONG, Appellant.

Supreme Court of Pennsylvania.

Argued April 29, 1981.

Decided Sept. 24, 1981.

Gary B. Gilman, Asst. Public Defender, Stuart Wilder, Asst. Public Defender, for appellant.

Stephen B. Harris, Asst. Dist. Atty., Michael S. Goodwin, Doylestown, for appellee.

Before ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

OPINION

KAUFFMAN, Justice.

The issue presented by this appeal is whether a person who successfully completes an Accelerated Rehabilitative Disposition Program ("ARD") is entitled to have his or her record of arrest expunged.[1]  For the reasons that follow, we

1. *See* Pa.R.Crim.P. 175–185.  "The purpose of [ARD] is to eliminate the need for lengthy motions, trials and other court proceedings, in

conclude that the policy considerations underlying ARD mandate that unless the Commonwealth demonstrates an overriding societal interest in retaining that record, expungement must be granted. Accordingly, we reverse and remand to the Court of Common Pleas of Bucks County.

Appellant, Regina Armstrong, was arrested on February 1, 1976, and charged with attempted theft by deception.[2] She was thereafter photographed and fingerprinted by the Middletown Township Police Department, and a record was made of her arrest.

On May 6, 1976, prior to her trial, the District Attorney of Bucks County selected appellant, a first offender, to participate in ARD. She successfully completed the program with payment of court costs on December 28, 1976, and on January 4, 1977, the District Attorney requested and was given leave by the court to *nolle pros* the information filed against her.

On March 16, 1977, appellant petitioned the Bucks County Court of Common Pleas to expunge her arrest record.[3] The only evidence presented at the expungement hearing revealed that appellant, who has never been convicted of any criminal offense, was employed as a part time file clerk at the Trenton Neighborhood Health Center in Trenton, New Jersey; that her take home pay was approximately $85.00 biweekly; that she had been employed at the Health Center for one and one-half years and was "first in line" for a full time position as an accounts payable clerk at an annual salary of $7,500.00; and that the Health Center did not act

cases which are relatively minor or which involve social or behavioral problems which can best be solved by programs and treatments rather than by punishment." Pa.R.Crim.P. 185 comment.

2. *See* 18 Pa.C.S.A. § 3922(a)(1). Appellant allegedly removed $222.00 in merchandise from the racks of Bamberger's Department Store in Langhorne, Pennsylvania without paying for it, and then attempted to obtain a cash refund.

3. She thus sought to remove her name, photograph, fingerprints, and fact of her arrest from the records kept by the local police department, the Pennsylvania State Police, and the Federal Bureau of Investigation.

on her application for the full time position because her arrest record precluded her ability to be "bonded," a prerequisite for the position. Although the Commonwealth failed to present any evidence, the hearing court denied appellant's petition, and the Superior Court affirmed without opinion, 261 Pa.Super. 502, 396 A.2d 12 (1978). We granted allocatur on March 15, 1979.[4]

Recently, in *Commonwealth v. Wexler,* 494 Pa. 325, 431 A.2d 877 (1981), Chief Justice O'Brien wrote for an unanimous Court "that in certain circumstances, substantive due process guarantees an individual the right to have his or her arrest record expunged." Id., 494 Pa. at 329, 431 A.2d at 879. *Accord, Commonwealth v. Capone,* 282 Pa.Super. 458, 422 A.2d 1383, 1384 (1980); *Commonwealth v. Briley,* 278 Pa.Super. 363, 420 A.2d 582, 584 (1980); *Commonwealth v. Welford,* 279 Pa.Super. 300, 420 A.2d 1344, 1345 (1980); *Commonwealth v. Bailey,* 278 Pa.Super. 51, 419 A.2d 1351, 1352 (1980); *Commonwealth v. Iacino,* 270 Pa.Super. 350, 411 A.2d 754, 757 (1979); *Commonwealth v. Rose,* 263 Pa.Super. 349, 397 A.2d 1243 (1979); *Commonwealth v. Mueller,* 258 Pa.Super. 219, 392 A.2d 763 (1978); *Commonwealth v. Malone,* 244 Pa.Super. 62, 366 A.2d 584 (1976). This right to petition for expungement is an adjunct to due process and is not dependent upon express statutory authority. *See Wolfe v. Beal,* 477 Pa. 477, 384 A.2d 1187 (1978); *Commonwealth v. Bailey, supra; Commonwealth v. Iacino, supra.*

In *Commonwealth v. Wexler, supra,* 494 Pa. at 329–330, 431 A.2d at 879, we expressed approval of the statement in *Commonwealth v. Malone, supra,* recognizing the serious harm an individual may suffer as a result of the Commonwealth's retention of an arrest record. In *Malone,* Judge Hoffman wrote:

The harm ancillary to an arrest record is obvious: "Information denominated a record of arrest, if it becomes known, may subject an individual to serious difficulties.

4. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, eff. June 27, 1978; 42 Pa.C.S.A. § 724.

Even if no direct economic loss is involved, the injury to an individual's reputation may be substantial. Economic losses themselves may be both direct and serious. Opportunities for schooling, employment, or professional licenses may be restricted or nonexistent as a consequence of the mere fact of an arrest, even if followed by acquittal or complete exoneration of the charges involved. An arrest record may be used by the police in determining whether subsequently to arrest the individual concerned, or whether to exercise their discretion to bring formal charges against an individual already arrested. Arrest records have been used in deciding whether to allow a defendant to present his story without impeachment by prior convictions, and as a basis for denying release prior to trial or an appeal; or they may be considered by a judge in determining the sentence to be given a convicted offender."

244 Pa.Super. at 68–69, 366 A.2d at 587–88, quoting *Menard v. Mitchell*, 430 F.2d 486, 490–91 (D.C.Cir.1970). We cautioned, however, that "[i]n determining whether justice requires expungement, the Court, in each particular case, must balance the individual's right to be free from the harm attendant to maintenance of the arrest record against the Commonwealth's interest in preserving such records," 494 Pa. at 329, 431 A.2d at 879, and then listed some of the factors that must be considered in making such a determination:

"These [factors] include the strength of the Commonwealth's case against the petitioner, the reasons the Commonwealth gives for wishing to retain the records, the petitioner's age, criminal record, and employment history, the length of time that has elapsed between the arrest and the petition to expunge, and the specific adverse consequences the petitioner may endure should expunction be denied."

Id., 494 Pa. at 330, 431 A.2d at 879, quoting *Commonwealth v. Iacino*, 270 Pa.Super. at 358, 411 A.2d at 759 (Spaeth, J., concurring).

In the case now before us, the only evidence presented at the expungement hearing revealed that appellant was laboring under severe hardships arising out of the retention of her arrest record, and the Commonwealth failed to point to any specific harm which would result from expungement or any law enforcement justification for the denial of appellant's petition. Nevertheless, the hearing court, apparently *sua sponte*, determined that the interests of her employer's bonding company out-weighed appellant's proven hardships, and refused to order expungement.

While it may be that the *private interests* of the bonding company would be furthered by retention of appellant's arrest record, the Commonwealth has failed to identify or demonstrate any overriding *state interest* in its retention. The reasoning of the hearing court would result in a general policy rejecting expungement, for, no matter what the circumstances, a bonding company would always be interested in ferreting out a potential applicant's arrest record. In *Commonwealth v. Wexler, supra*, however, we rejected this same argument and held that "[t]he mere assertion of a general interest in maintaining accurate records regarding those accused of crime does not outweigh . . . [a] specific, substantial interest in clearing . . . [one's] record." 494 Pa. at 335, 431 A.2d at 882, quoting *Commonwealth v. Welford*, 279 Pa.Super. at 302, 420 A.2d at 1345.

Furthermore, both the hearing court and the Commonwealth have failed to recognize that the policies underpinning the concept of ARD weigh heavily in favor of expungement here. ARD was established pursuant to Rules 175–185 of the Pennsylvania Rules of Criminal Procedure promulgated by this Court on May 24, 1972. In the comment accompanying Rule 185, the Criminal Procedural Rules Committee noted that the program was designed to dispose promptly of relatively minor cases involving social or behavioral problems "which can best be solved by programs and treatments rather than by punishment." Pa.R.Crim.P., Rule 185 comment. Although legal defenses may be available in many of the cases selected for ARD which would result in acquittal

or delay if tried, the program is attractive to many defendants because it provides them with an opportunity to "earn a clean record..." *Id.* Indeed, the fundamental appeal of ARD for first time offenders is the avoidance of a criminal record. Thus, to refuse expungement to those who successfully complete ARD would seriously deter participation in the program, undermine its rehabilitative purposes, and impose additional strain on the judicial system by eliminating prompt disposition of numerous minor charges.

Our rules give district attorneys broad discretion to select which crimes and which individuals qualify for diversion into ARD. See Pa.R.Crim.P., Rules 175–177.[5] In holding that a petitioner who successfully completes ARD is entitled to expungement, the Superior Court has noted that "the Commonwealth may mislead defendants if it seems to promise a clean record to them and then opposes expungement." *Commonwealth v. Briley*, 278 Pa.Super. at 373 n.6, 420 A.2d at 588 n.6.[6] And, in *Commmonwealth v. Welford, supra,* Judge Hoffman wrote:

> By recommending an accused for ARD, the Commonwealth agrees that he will be free from criminal responsibility if he successfully completes the ARD program. Therefore, it is likely that the accused enters into this agreement with the understanding that if he successfully completes the ARD program his record will be expunged.

279 Pa.Super. at 304, 420 A.2d at 1345.

In *Briley* and *Welford* the Superior Court concluded that "where the accused is held for trial after his preliminary

---

**5.** As was well stated by Judge Spaeth in *Commonwealth v. Briley, supra:*

> Here, by moving the lower court for appellant's admission into the ARD program, the Commonwealth demonstrated its belief that the nature of appellant's offense and his background and character were such that the interests of society would be best served were he not prosecuted, but diverted out of the criminal justice system as quickly as possible.

*Commonwealth v. Briley*, 278 Pa.Super. at 370, 420 A.2d at 586, quoted in *Commonwealth v. Wexler*, 494 Pa. at 334, 431 A.2d at 882.

**6.** In *Briley*, the Superior Court concluded that the petitioner, who had successfully completed ARD, was entitled to expungement of his arrest record.

hearing, but subsequently completes an ARD program, 'the Commonwealth has the burden of justifying the retention of appellant's arrest record.'" *Commonwealth v. Welford,* 279 Pa.Super. at 302, 420 A.2d at 1345, quoting *Commonwealth v. Briley,* 278 Pa.Super. at 370, 420 A.2d at 586. On facts much like those presented here, we held in *Commonwealth v. Wexler, supra,* that a juvenile charged with a crime who entered into a program for allegedly delinquent children similar to an ARD program was entitled to the expunction of her arrest record because the Commonwealth failed to demonstrate an overriding interest in retaining that record. 494 Pa. at 334, 431 A.2d at 882.[7]

Similarly, the Commonwealth here has failed to identify any law enforcement need to retain appellant's arrest record. This failure, coupled with the policy inherent within ARD to offer first offenders a new start, compels the conclusion that appellant, who has never been convicted of any criminal offense, is entitled to have her record expunged as requested.

Accordingly, the order of the Superior Court affirming the order of the Court of Common Pleas of Bucks County is reversed and the case is remanded to the trial court with instructions to enter an order expunging the record of appellant's arrest.[8]

O'BRIEN, C. J., did not participate in the consideration or decision of this case.

7.  See the Juvenile Act, Act of Dec. 6, 1972, No. 333, § 8.1, 11 P.S. § 50–305; substantially reenacted by the Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June 27, 1978; *as amended* by the Act of April 28, 1978, P.L. 202, No. 53, § 29, effective June 27, 1978, codified at 42 Pa.C.S. § 6340.

8.  Our decision is in accord with the provisions of the Criminal History Record Information Acts of 1978 and 1979. *See* 18 Pa.C.S.A. § 9122(a)(2) & (c) (Supp.1981–82). The present case, however, arose before the effective dates of those statutes.