2025 PA Super 252

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROSANNA MARIA PHILLIPS | : | |
| | : | |
| Appellant | : | No. 2361 EDA 2024 |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002795-2001

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROSANNA MARIA PHILLIPS | : | |
| | : | |
| Appellant | : | No. 2362 EDA 2024 |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002796-2001

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROSANNA MARIA PHILLIPS | : | |
| | : | |
| Appellant | : | No. 2363 EDA 2024 |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002797-2001

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

|  |  |  |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROSANNA MARIA PHILLIPS | : | |
| | : | |
| Appellant | : | No. 2364 EDA 2024 |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002798-2001

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROSANNA MARIA PHILLIPS | : | |
| | : | |
| Appellant | : | No. 2365 EDA 2024 |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002799-2001

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROSANNA MARIA PHILLIPS | : | |
| | : | |
| Appellant | : | No. 2366 EDA 2024 |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002800-2001

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |

ROSANNA MARIA PHILLIPS              :
                                   :
                Appellant          :     No. 2367 EDA 2024

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002801-2001

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                   :            PENNSYLVANIA
                                   :
             v.                    :
                                   :
                                   :
                                   :
ROSANNA MARIA PHILLIPS              :
                                   :
                Appellant          :     No. 2368 EDA 2024

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002802-2001

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                   :            PENNSYLVANIA
                                   :
             v.                    :
                                   :
                                   :
                                   :
ROSANNA MARIA PHILLIPS              :
                                   :
                Appellant          :     No. 2369 EDA 2024

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002803-2001

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                   :            PENNSYLVANIA
                                   :
             v.                    :
                                   :
                                   :
                                   :
ROSANNA MARIA PHILLIPS              :
                                   :
                Appellant          :     No. 2370 EDA 2024

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002804-2001

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROSANNA MARIA PHILLIPS | : | |
| | : | |
| Appellant | : | No. 2371 EDA 2024 |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002805-2001

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROSANNA MARIA PHILLIPS | : | |
| | : | |
| Appellant | : | No. 2372 EDA 2024 |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002806-2001

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROSANNA MARIA PHILLIPS | : | |
| | : | |
| Appellant | : | No. 2373 EDA 2024 |

Appeal from the Order Entered August 12, 2024

- 4 -

In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002807-2001

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROSANNA MARIA PHILLIPS | : | |
| | : | |
| Appellant | : | No. 2374 EDA 2024 |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002808-2001

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROSANNA MARIA PHILLIPS | : | |
| | : | |
| Appellant | : | No. 2375 EDA 2024 |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002809-2001

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROSANNA MARIA PHILLIPS | : | |
| | : | |
| Appellant | : | No. 2376 EDA 2024 |

Appeal from the Order Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0004005-2001

J-A14044-25

BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY FORD ELLIOTT, P.J.E.:          **FILED NOVEMBER 12, 2025**

Appellant, Rosanna Maria Phillips, appeals from the order of the Court of Common Pleas of Chester County that denied her petitions for expungement that were filed in all but one of the underlying criminal matters. She maintains, *inter alia*, that it was an abuse of discretion for expungement to be denied based on a finding that the certified record demonstrated that the charges addressed in her petitions were dismissed pursuant to a plea agreement. We agree with her on that point but nevertheless find that the expungement petitions were properly denied. Accordingly, we affirm.

On March 22, 2024, Appellant filed petitions for expungements pursuant to Pennsylvania Rule of Criminal Procedure 790, with respect to all but one of the criminal matters addressed in the instant appeals that have been consolidated for our review.[1] The convictions addressed in appeals at 2361-

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] While the order on appeal includes CP-15-CR-0002809-2001 in its caption, no expungement petition was docketed in that case or appears to be included in the certified record for the related appeal at 2375 EDA 2024.

Appellant's brief addresses an additional appeal at 2377 EDA 2024, involving a criminal matter at CP-15-CR-0003857-2003. That appeal was originally consolidated with the other instant appeals by our order filed on October 22, 2024, but was later unconsolidated by our subsequent order filed on December 5, 2024. **See** Superior Court Order (consolidation), 10/22/24 (2377 EDA 2024); Superior Court Order (unconsolidation), 12/5/24. On January 17, 2025, following our issuance of a rule to show cause order, we vacated the order on appeal as it pertained to the matter at CP-15-CR-
*(Footnote Continued Next Page)*

- 6 -

2376 EDA 2024 resulted from guilty pleas Appellant entered on November 30, 2001. *See* Written Guity Plea Colloquy, 11/30/01 (CP-15-CR-0002795-2001, CP-15-CR-0002796-2001, CP-15-CR-0002797-2001, CP-15-CR-0002798-2001, CP-15-CR-0002799-2001, CP-15-CR-0002800-2001, CP-15-CR-0002801-2001, CP-15-CR-0002802-2001, CP-15-CR-0002803-2001, CP-15-CR-0002804-2001, CP-15-CR-0002805-2001, CP-15-CR-0002806-2001, CP-15-CR-0002807-2001, CP-15-CR-0002808-2001, CP-15-CR-0002809-2001, and CP-15-CR-0004005-2001).

At the November 30, 2001 plea hearing, Appellant pleaded guilty to: twelve counts of burglary (CP-15-CR-0002795-2001, CP-15-CR-0002796-2001, CP-15-CR-0002797-2001, CP-15-CR-0002798-2001, CP-15-CR-0002800-2001, CP-15-CR-0002801-2001, CP-15-CR-0002803-2001, CP-15-CR-0002804-2001, CP-15-CR-0002805-2001, CP-15-CR-0002806-2001, CP-15-CR-0002807-2001, and CP-15-CR-0002809-2001), three counts of theft by unlawful taking (CP-15-CR-000-2799-2001, CP-15-CR-000-2802-2001, and CP-15-CR-0002808-2001), and one count of unauthorized use of an automobile (CP-15-CR-0004005-2001).[2] *See* Written Guity Plea Colloquy, 11/30/01. The written guilty plea colloquy includes a notation indicating that

---

0003857-2003, remanded the appeal at 2377 EDA 2024 to the plea court for further proceedings limited to Appellant's request for expungement in that case, and relinquished our jurisdiction. *See* Superior Court Order (remand with jurisdiction relinquished), 1/17/25 (2377 EDA 2024). "On January 24, 2025, the [plea] court entered a new order granting th[e] expungement in that case." Amended Plea Court Opinion, 2/27/25, 1 n.3.

[2] 18 Pa.C.S. §§ 3502(a), 3921(a), and 3928(a), respectively.

Appellant entered an "open plea of guilty," referring to the fact that the pleas were entered without any agreement for a sentencing recommendation. *See id.* at 3. At the same time, limited access versions of the trial court's dockets in all of the cases in which Appellant entered her guilty pleas, which are included in the various records certified for appeal, refer to the remaining charges in each case as being "*nolle prossed*." *See* Limited Access Trial Court Docket Sheets, "Disposition/Sentencing/Penalties" Sections.

The sentencing orders in the various cases indicate that, on January 24, 2002, the trial court sentenced Appellant to eleven and one-half to twenty-three months' imprisonment for eight of the twelve convictions of burglary, six to twelve months' imprisonment for the three theft convictions, eleven and one-half to twenty-three months' imprisonment for the lone unauthorized use of an automobile conviction, and ten years' probation on the remaining four convictions of burglary. *See* Orders (sentencing), 1/24/02. A grant of parole by the Court of Common Pleas on March 26, 2022, suggested that all of the imprisonment terms were designated to be served concurrently such that the trial court retained the authority to grant parole. *See* Orders (parole), 3/26/22.

In the petitions filed on March 22, 2024, Appellant sought the expungement of the additional charges in each of the underlying matters that the Commonwealth had *nolle prossed*. *See* Petitions for Expungement, 3/22/24, 1-2 (similar copies filed in all of the underlying criminal matters except for CP-15-CR-0002809-2001). She asserted the following reason for

expungement in each of the petitions: "As a result of these arrests and subsequent photographing and fingerprinting, [Appellant] has been caused to suffer embarrassment and irreparable harm and loss of job opportunities. Expungement is proper under 18 Pa.C.S. [§] 9122 as the charges to be expunged were [d]ismissed and relief is allowed under law." *Id.* at 2.

On April 25, 2024, the Commonwealth filed objections to all of Appellant's expungement petitions and filed an objection in the case at CP-15-CR-0002809-2001 in which Appellant never filed an expungement petition. *See* Commonwealth Objections to Expungement Petitions, 4/25/24 ("Objections"). The Objections asserted *Commonwealth v. Lutz*, 788 A.2d 993 (Pa. Super. 2001), or Appellant's subsequent conviction for driving under the influence as the reason to deny expungement.[3] In *Lutz*, we held that an appellant was not entitled to expungement of dismissed charges where the Commonwealth agreed to dismiss the charges at issue as part of a negotiated plea bargain in exchange for the entry of the guilty plea. 788 A.2d at 1001

_____

[3] The Commonwealth's Objections specified the following reasons: (1) "Petitioner pled to [an]other felony[, citing *Lutz*,] in this matter," Objections (CP-15-CR-0002795-2001, CP-15-CR-0002796-2001, CP-15-CR-0002797-2001, CP-15-CR-0002798-2001, CP-15-CR-0002800-2001, CP-15-CR-0002801-2001, CP-15-CR-0002803-2001, and CP-15-CR-0002804-2001); (2) "Petitioner had a [driving under the influence offense] the following year," *id.* (CP-15-CR-0002799-2001); (3) "Petitioner did not remain crime-free, [but committed a driving under the influence offense] the following year," *id.* (CP-15-CR-0002802-2001 and CP-15-CR-0002808-2001); (4) "Petitioner pled," *id.* (CP-15-CR-0002805-2001); (5) "*Lutz*," Objections (CP-15-CR-0002806-2001, CP-15-CR-0002807-2001, and CP-15-CR-0002809-2001); and (6) "Charges [were] withdrawn as part of [the] plea," *id.* (CP-15-CR-0004005-2001).

("the better resolution is to deny expungement of the charges dismissed as part of Appellant's plea agreement, particularly where Appellant has already been bound over for trial on all charges, the Commonwealth is fully prepared to proceed against Appellant on all charges at trial, and Appellant admits to facts that could essentially constitute culpability for the dismissed charges.").

On June 20, 2024, the plea court convened a hearing on the expungement petitions. The court reviewed the dockets for all of the underlying criminal matters and the written plea colloquy from the November 30, 2001 plea hearing. *See* N.T. Expungement Hearing, 6/20/24, 10-17. The court chose to bifurcate the proceeding because the plea colloquy "did not clearly delineate what [had] happened" with respect to the circumstances of the plea hearing. *Id.* at 18 (the court: "I'm at a disadvantage if I don't know what happened … You can do some further research if you believe, based on what you looked at and have more time to digest this, that either you're in agreement; if you oppose, we can continue this hearing."). At the resumption of the hearing at a later date, the court admitted into the record a copy of Appellant's criminal history and heard arguments from the parties before holding the matter under advisement. *See* N.T. Expungement Hearing, 8/7/24, 3-9.

On August 12, 2024, the plea court denied all of the expungement petitions filed with respect to the underlying criminal matters, noting that the denial was made "in accordance with *Commonwealth v. Lutz*." Orders (expungement denial), 8/12/24, 1. On August 22, 2024, Appellant filed a

motion for reconsideration, asserting that the Commonwealth failed to meet a burden to show by clear and convincing evidence that expungement was improper under **Lutz** and that the plea court abused its discretion and erred as a matter of law by failing to require the Commonwealth to meet that burden and by *sua sponte* applying **Lutz**. **See** Reconsideration Motion, 8/22/24, ¶¶ 1-3. Appellant thereafter timely filed notices of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). **See** Notices of Appeals, 9/10/24; Amended Rule 1925(b) statement, 9/19/24; Rule 1925(b) Statement, 9/25/24. The plea court satisfied its obligations under Rule 1925. **See** Plea Court Opinion, 11/19/24; Amended Plea Court Opinion, 2/27/25.

Appellant presents the following questions for our review:

1. Whether the [plea] court erred in *sua sponte* applying **Lutz** when the Commonwealth did not raise or argue the application [of that opinion] during the hearing[?]

2. Whether the [plea] court erred in holding **Lutz** was applicable to all cases, when all cases [. . .] were resolved by an open guilty plea rather than a plea agreement[?]

3. Whether the [plea] court failed to appropriately balance the [**Commonwealth v. **]**Wexler**[, 431 A.2d 877 (Pa. 1981),] factors, [which the] parties agreed were applicable at [the] hearing[?]

Appellant's Brief, 4 (unnecessary capitalization and full citation to **Lutz** omitted).

Appellant is appealing from the denial of her petitions seeking to expunge from her criminal record the charges that the Commonwealth

appeared to have *nolle prossed* in each of the underlying criminal matters. Before addressing her claims, a review of our standard of review and the Commonwealth's relevant law on expungement is necessary for evaluating the issues before us.

"The decision to grant or deny a request for expungement of an arrest record lies in the sound discretion of the trial judge, who must balance the competing interests of the petitioner and the Commonwealth. We review the decision of the trial court for an abuse of discretion." ***Commonwealth v. Waughtel***, 999 A.2d 623, 624-25 (Pa. Super. 2010) (citation omitted).

When considering an expungement petition in the first instance, the appropriate legal standard is controlled by the manner of disposition of the charges at issue:

> Our Supreme Court has explained that "[j]udicial analysis and evaluation of a petition to expunge depends upon the manner of disposition of the charges against the petitioner." ***Commonwealth v. Moto***, [ ] 23 A.3d 989, 993 ([Pa.] 2011). "When an individual has been convicted of the offenses charged, then expungement of criminal history records may be granted only under very limited circumstances that are set forth by statute." ***Id.*** (citing 18 Pa.C.S.[ ] § 9122; ***Hunt v. Pennsylvania State Police***, [ ] 983 A.2d 627, 633 ([Pa.] 2009). When the defendant has been tried and acquitted of the offenses charged, he is "automatically entitled to the expungement of his arrest record." ***Id.*** (citing ***Commonwealth v. D.M.***, [ ] 695 A.2d 770, 772-73 ([Pa.] 1997)). Finally, when the Commonwealth withdraws the charges against the defendant prior to trial, […] the court must apply the standards articulated in ***Commonwealth v. Wexler***, [ ] 431 A.2d 877, 879, ([Pa.] 1981), to the expungement petition. ***Id.***

***Commonwealth v. Adams***, 317 A.3d 639, 643-644 (Pa. Super. 2024).

Where entire cases are *nolle prossed* or withdrawn, as in **Adams**, we apply the balancing test addressed in **Wexler** which includes the following non-exhaustive list of factors that we should consider:

> [(1)] the strength of the Commonwealth's case against the petitioner [; (2)] the reasons the Commonwealth gives for wishing to retain the records[; (3)] the petitioner's age, criminal record, and employment history[; (4)] the length of time that has elapsed between the arrest and the petition to expunge[; and (5)] the specific adverse consequences the petitioner may endure should expunction be denied.

**Wexler**, 431 A.2d at 879 (citation and quotation marks omitted).

With respect to the application of the **Wexler** test, our Supreme Court has emphasized that:

> in applying the balancing test and considering the above factors, the court must analyze the particular, specific facts of the case before it. The mere assertion by the Commonwealth of a general interest in maintaining accurate records of those accused of a crime does not outweigh an individual's specific, substantial interest in clearing his or her record.
>
> In addition, **Wexler** explicitly placed the burden of proof on the Commonwealth. The case against the **Wexler** appellants had been *nolle prossed* after the Commonwealth had admitted that it would be unable to sustain its burden of proof at trial. Nonetheless, the trial court denied the appellants' petition to expunge their arrest records, and the Superior Court affirmed. This Court reversed and ordered expungement, concluding that the Commonwealth had not proffered "compelling evidence" to justify the retention of the appellants' arrest records. Importantly, in general terms, we held that when the Commonwealth admits that it is unable to bear its burden of proof beyond a reasonable doubt at trial, then "the Commonwealth must bear the burden of justifying why the arrest record should not be expunged."

**Moto**, 23 A.3d at 993-94 (citations omitted).

The ***Wexler*** test, however, is not applied in the situation where the charges at issue in an expungement petition were *nolle prossed* or withdrawn as part of a plea agreement:

> When the defendant pleads guilty and the Commonwealth agrees to dismiss charges as part of the plea agreement, a defendant is normally not entitled to expungement of the dropped charges under the ***Wexler*** factors. [***See***] ***Commonwealth v. Lutz***, 788 A.2d 993 (Pa.[ ]Super.[ ]2001). In such a scenario, the Commonwealth dismisses charges in connection with a plea arrangement and, accordingly, there is no implicit or express admission that it lacks evidence to convict a defendant of the crimes. The action of dropping the charges is viewed as a contractual arrangement negotiated as part of the plea bargain. ***Id.*** This situation is contrasted with that involved in the *nol pros* setting, where the Commonwealth concedes that there is insufficient evidence to support the dismissed charges. ***Id.*** Thus, if expungement were permitted as to charges withdrawn pursuant to a plea bargain rather than due to a lack of evidence, there would not be an accurate record of the agreement reached bv the defendant and the Commonwealth. ***Id.*** Furthermore, "[i]n the absence of an agreement as to expungement, Appellant stands to receive more than he bargained for in the plea agreement if the dismissed charges are later expunged." ***Id.*** at 1001. ***But see Commonwealth v. A.M.R.***, 887, A.2d 1266 (Pa.[ ]Super.[ ]2005) (where charges of theft and misapplication of entrusted property were dropped after defendant agreed to resign from his job, defendant's arrest record was ordered to be expunged); ***Matter of Pflaum***, [ ] 451 A.2d 1038 ([Pa. Super.] 1982) (before the district justice, Commonwealth dropped charges of burglary, trespass, and theft and defendant pleaded guilty to disorderly conduct; defendant was entitled to have record of withdrawn charges expunged). In applying ***Lutz*** and ***Wexler*** in the plea agreement setting, we have had occasion to remand to the trial court to make a clear record as to whether charges were *nol prossed* based upon lack of evidentiary support or whether the charges were dropped in exchange for the plea. ***See Commonwealth v. Hanna***, 964 A.2d 923 (Pa.[ ]Super.[ ]2009).

- 14 -

*Commonwealth v. V.G.*, 9 A.3d 222, 225-26 (Pa. Super. 2010); *see also Lutz*, 788 A.2d at 1000 (trial court observation that, if a court were to expunge charges dismissed as part of a plea agreement, then the court would "leave no accurate record of the contractual relationship entered into by [Appellant] and the Commonwealth").[4]

Here, the order on appeal indicates that the plea court denied Appellant's expungement petitions "in accordance with . . . *Lutz*." Order (expungement denial), 8/12/24, 1. The plea court applied *Lutz* because it inferred that, while Appellant's underlying criminal matters were resolved with guilty pleas without any agreement as to a sentencing recommendation, the pleas were negotiated in the sense that they were entered into in exchange for the dismissal of the additional related and lesser charges[5] other than the

---

[4] For the sake of context, we note that we previously stated in *Hanna* that "*Lutz* is arguably inconsistent with broad language from this Court and our Supreme Court, as well as the prevailing trend of our case law," but that "we are not free to ignore *Lutz* outright, because it has not been overruled by this Court *en banc* or by our Supreme Court." *Hanna*, 964 A.2d at 928-29 & n.4 (footnotes omitted), *citing D.M.*, 695 A.2d at 772 ("We reiterate the authority of *Wexler*, and the balancing test approved therein as the means of deciding petitions to expunge the records of all arrests which are terminated without convictions except in cases of acquittals"), and *A.M.R.*, 887 A.2d at 1268 ("where the Commonwealth has dropped the charges against a petitioner or otherwise has failed to carry its burden of proof beyond a reasonable doubt, the Commonwealth must bear the burden of showing why an arrest record should not be expunged").

[5] In the cases in which Appellant pleaded guilty to burglary, the *nolle prossed* charges included related conspiracy charges and lesser offenses for criminal trespass, theft, and criminal mischief. In the cases in which Appellant pleaded guilty to theft by unlawful taking, the *nolle prossed* charges included related
*(Footnote Continued Next Page)*

- 15 -

lead offenses for which Appellant was pleading guilty (even though the various limited access trial dockets listed that the charges for proposed expungement were *nolle prossed* rather than dismissed):

> Appellant's crimes were not unsubstantiated, nor were they *nolle prossed*. In 2001, Appellant admitted to accomplice liability for the burglary and unlawful taking charges, while admitting full liability for the unauthorized use of a motor vehicle. Accordingly, these files were not dismissed under unspecified circumstances. Instead, they were plead[ed] guilty to in the face of a viable Commonwealth case and after consultation with counsel. Therefore, this Court did not err in applying **Lutz** to these files.

Amended Plea Court Opinion, 2/27/25, 5-6 (footnote and record citation omitted); **see also id.** at 2 ("The above[-]captioned cases were resolved through a negotiated plea agreement."); **see, e.g., Waughtel**, 999 A.2d at 626 (applying **Lutz** where, although a plea court's docket sheets indicated the remaining charges at issue were *nolle prossed*, notes of testimony revealed that the charges were dismissed and the plea court, as part of its decision on the denial of expungement, determined that the remaining charges were dismissed as part of a plea agreement).

In her first issue, Appellant alleges that the plea court "abused its discretion by choosing to ignore the Commonwealth's argument presented at the [bifurcated] hearing and *sua sponte* applying **Lutz**." Appellant's Brief, 11.

---

charges for conspiracy and theft by receiving stolen property and lesser charges for criminal mischief. In the case in which Appellant pleaded guilty to unauthorized use of an automobile, the *nolle prossed* charges included Vehicle Code violations for driving without a license and driving while operating privileges were suspended or revoked.

While the Commonwealth raised the application of *Lutz* in some of its written objections to the various expungement petitions, the Commonwealth conceded the application of the *Wexler* balancing test at the bifurcated hearing on the petitions. *See* N.T. Expungement Hearing, 8/7/24, 6 (Prosecutor: "I agree with [the] defense that the *Wexler* factors are the standard that the [c]ourt must use to determine whether expungement is appropriate or not."). On appeal, Appellant asserts that the Commonwealth waived any argument for the application of *Lutz* and that the plea court abused its discretion by then "*sua sponte*" applying *Lutz. See* Appellant's Brief, 13 ("the [plea] court considered *Lutz* *sua sponte*, despite the Commonwealth having waived, or otherwise failing to meet its burden of proof regarding *Lutz*."). She suggests that the Commonwealth's abandonment of any argument for applying *Lutz* at the bifurcated hearing should have cabined the plea court into only applying the *Wexler* test. *See* Appellant's Brief, 13 ("the [plea] court abused its discretion by failing to limit its scope of review to solely the testimony and evidence presented at the expungement hearing").

In a reply brief, Appellant also argues that the Commonwealth waived any argument for applying *Lutz* pursuant to Pennsylvania Rule of Appellate Procedure 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal"), and that consideration of the application of *Lutz* by this Court would result in an improper shifting of a burden of proof. *See* Appellant's Reply Brief, 7-11.

In arguing that the Commonwealth waived any argument for the application of **Lutz** on appeal, Appellant relies on case law discussing the failure of an **appellant** to preserve arguments in a trial court. **See** Appellant's Reply Brief, 8, **citing Commonwealth v. York**, 465 A.2d 1028, 1032 (Pa. Super. 1983) (a defendant, acting as an appellant in *his* cross-appeal, waived an argument for dismissal of charges due to intentional bad faith conduct where the defendant did not preserve it in an omnibus pretrial motion; stating "it is clear that on appeal a new and different theory of relief may not be successfully advanced for the first time on appeal"). To suggest that the plea court was limited to only considering the oral arguments made by the Commonwealth concerning the **Wexler** test, Appellant refers us to **In re L.J.**, 79 A.3d 1073, 1080 (Pa. 2013), a case in which our Supreme Court held that the appellate scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing at issue. **See L.J.**, 79 A.3d at 1087.

Appellant's arguments in support of her first issue wither under scrutiny. Appellant's reliance on Rule 302(a) is inapt because that rule applies to appellants and not appellees. **See In re T.P.**, 78 A.3d 1166, 1170 (Pa. Super. 2013) (noting agreement with a juvenile appellee's argument that the Commonwealth's assertion of waiver by the juvenile appellee were inapt). Moreover, it is immaterial for our purposes whether the Commonwealth preserved any argument concerning **Lutz** below because "it is a well-settled doctrine in this Commonwealth that a trial court can be affirmed on any valid

basis appearing of record." ***T.P.***, 78 A.3d at 1170. Appellant's citation to ***L.J.*** is also inapposite in these contexts: a limitation on the scope of review for the *evidentiary record* for consideration of an appellate review of a suppression order is not a limitation on *legal grounds* an appellate court may consider on appeal from a trial court's order. Appellant's argument in her first issue is essentially that appellate courts are limited to only considering the legal arguments made by an appellee below. That is entirely incorrect. ***See T.P.***, 78 A.3d at 1171 ("courts are not required to view only the specific rules, statutes, or cases cited by a party"). In this appeal, our standard of review requires us to consider whether the plea court's denial of the expungement petitions based on ***Lutz*** – the ruling made below – was an abuse of discretion regardless of what arguments the Commonwealth, who is now the appellee, preserved before the plea court. Accordingly, no relief is due on Appellant's first issue.

In her second issue, Appellant argues that the plea court erred by applying ***Lutz*** and concluding that expungement could not be granted because the charges addressed in her expungement petitions were dismissed in connection with a plea arrangement. ***See*** Appellant's Brief, 14-16. She agrees that ***Lutz*** applies to charges dismissed "as part of a negotiated plea bargain," but suggests that she merely entered open guilty pleas and thus the application of ***Lutz*** in this case would be an impermissible expansion of law. Appellant's Brief, 15. In support of her argument that the charges at issue were not dismissed pursuant to a plea agreement, she directs us to a section

of her written guilty plea colloquy stating: "This is an OPEN PLEA OF GUILTY to the crime(s) forth on the previous page(s). There is no plea bargain or other agreement relating to the plea to those crimes except as stated below." Appellant's Reply Brief, 5 (emphasis omitted), *quoting* Written Guilty Plea Colloquy, 11/30/01, 3. She maintains that section of the written plea colloquy prevents the Commonwealth from arguing for the existence of any plea agreement not explicitly included in the written guilty plea colloquy. *See* Appellant's Reply Brief, 5-6.

The existence of a plea agreement that encompassed the withdrawal of the charges at issue had to be proven in the record by the Commonwealth, which would have a "heavy burden" of proving the terms of the plea agreement by "clear and convincing evidence." *Hanna*, 964 A.2d at 929 ("we now further hold that the Commonwealth bears the burden of proving on remand with clear and convincing evidence that *Lutz* applies. If the Commonwealth fails to carry that heavy burden, then the *Wexler* test will apply."). Based on the limited record before us – *i.e.*, there are no notes of testimony from the 2001 guilty plea hearing in the certified record – we must agree with Appellant that there was insufficient evidence for the plea court's application of *Lutz*.

First, the plea court's dockets identify the charges at issue as "*nolle prossed*," rather than dismissed as part of a plea agreement, which generally suggests the lack of any plea agreement for the dismissal of the charges. *See Hanna*, 964 A.2d at 926-27 ("A *nolle prosse* is essentially a decision by the

Commonwealth that there is insufficient evidence to support the charges at the present time, with the caveat that the Commonwealth may reinstate the charges later. In contrast, the Commonwealth's decisions to drop charges pursuant to a plea agreement carries no such implicit admission that proof is lacking.") (citation omitted). Second, while we have overlooked the designation of charges as being listed as *nolle prossed* in court dockets where notes of testimony have otherwise shown the charges to be dismissed, **see Waughtel**, 999 A.2d at 626, we are unable to do so here because there are no notes of testimony from Appellant's guilty plea hearing and her written guilty plea colloquy is completely silent as to the resolution of the charges other than the ones to which she pleaded guilty. Third, the plea court's notations of "N/A," indicating "not applicable" with respect to references in the written guilty plea colloquy about the approval of a "foregoing plea agreement" and sentencing "in accordance with [a] plea agreement," further support Appellant's argument that her affirmation of an "open guilty plea" in the written colloquy proved the lack of a plea agreement implicating **Lutz**. **See** Written Guilty Plea Colloquy, 11/30/01, 11.

At the same time, there are some factors that support the Commonwealth's present argument for the existence of a plea agreement as to the dismissal of the charges addressed in the expungement petitions. The sentencing orders for the various cases include "checked boxes" referring to "other counts" as "W/D" (*i.e.*, withdrawn) rather than "N/P" (*i.e.*, *nolle prossed*), even though the written guilty plea colloquy is silent as to any

- 21 -

agreement as to the withdrawal of any charges. Moreover, the fact that Appellant admitted, in the written guilty plea colloquy, to committing all of her burglary and theft by unlawful taking convictions under an accomplice liability theory suggests that she was also guilty of her related conspiracy charges that were *nolle prossed* and that, at a minimum, the conspiracy charges were withdrawn as part of a plea agreement rather than *nolle prossed* due to an inability to prove Appellant's guilt on her related and lesser charges to the lead offenses to which she pleaded guilty. ***See*** Written Guilty Plea Colloquy, 11/30/01, 2.

Moreover, the "open guilty plea" section of the written colloquy, which Appellant mainly relies on, is poorly constructed and unclear. Namely, it states that "There is no plea bargain or other agreement relating to the plea to those crimes *except as stated below*," but the section referred to as "below" only includes a "fill-in-the-blank" area addressing plea agreements concerning sentencing recommendations and leaves no space for addressing plea agreements involving considerations outside of sentencing recommendations – such as an agreement for the withdrawal of pending charges.[6] Written Guilty Plea Colloquy, 11/30/01, 3.

_____

[6] The written guilty plea colloquy used in this case only contemplates the possibility of two types of guilty pleas, open guilty pleas and stipulated guilty pleas, and it appears to treat stipulated guilty pleas as synonymous with plea agreements whereas stipulated guilty pleas are only one subset of outcomes that may arise from a plea agreement:

*(Footnote Continued Next Page)*

The fact that Appellant pleaded guilty to the lead offenses in all of the cases generally speaks to the Commonwealth's ability to prove its prosecutions to some extent and the absence of any orders expressly granting *nolle prosequi* additionally hints at the existence of an agreement whereby the Commonwealth consented to drop the additional charges in exchange for the guilty pleas entered. Taken together, however, these circumstances support mere hints of, or a hunch as to, the existence of a plea agreement, but do not rise to the level of clear and convincing evidence, as required in **Hanna**, for

_____

[There are] three general types of guilty pleas a defendant may enter. The first is often referred to as an "open" plea. Under an open plea, the defendant does not enter into an agreement with the Commonwealth. There is no *quid pro quo* exchange between the defendant and the Commonwealth whereby the Commonwealth agrees to some action in exchange for the defendant's guilty plea. The second type of guilty plea is where the defendant enters into an agreement with the Commonwealth, *i.e.*, a plea agreement. The Commonwealth agrees to some *quid pro quo* in exchange for the defendant's guilty plea and, in certain cases, other actions, *e.g.*, cooperation. These types of guilty pleas are covered by Pennsylvania Rule of Criminal Procedure 590(B). Third, a defendant may enter a guilty plea which is a special subset of the second type of guilty pleas. Often referred to as "stipulated" guilty pleas, [these pleas occur where] a defendant agrees to plead guilty in exchange for receiving a specific sentence. Unlike Federal Rule of Criminal Procedure 11(c)(1)(C), which governs these type of guilty pleas in federal district court, there is no Pennsylvania Rule of Criminal Procedure addressing stipulated guilty pleas. Nonetheless, our common law has developed to closely mirror Federal Rule of Criminal Procedure 11(c)(1)(C) in these circumstances. A defendant who does not receive the stipulated sentence is entitled to withdraw his or her guilty plea without having to satisfy any further requirements.

*Commonwealth v. Williams*, 198 A.3d 1181, 1184-85 (Pa. Super. 2018) (citation omitted).

demonstrating the existence of a plea agreement that would implicate *Lutz* as the controlling standard for review.[7]

If there was a plea agreement in this case, it should have been referenced in some manner in Appellant's written guilty plea colloquy. The complete absence of any reference to a plea agreement in the written colloquy compels us to agree with Appellant that the plea court erred and abused its discretion by summarily denying the expungement petitions based on *Lutz*, in lieu of reviewing them pursuant to the *Wexler* balancing test.

Our holding as to the inappropriate application of *Lutz* does not require us to remand for a hearing to apply *Wexler* because the parties addressed the application of *Wexler* at the bifurcated expungement hearing, the plea court offers its analysis under *Wexler* in its amended Rule 1925(a) opinion, and Appellant evaluates her arguments for expungement based on *Wexler*'s balancing test in her remaining claim. We thus continue our review.

In her third claim, Appellant argues that the plea court abused its discretion by alternatively concluding that her expungement petitions failed under the *Wexler* test. *See* Appellant's Brief, 17-23. With respect to this claim, the plea court offers the following relevant analysis in its opinion:

---

[7] The Commonwealth also asserts that Appellant "confessed to law enforcement her involvement in committing these crimes" and notes that, with respect to one her the cases, her "co-defendant implicated her." Appellee's Brief, 13 & n.3. The Commonwealth offers no record citations for these assertions, and we do not contemplate them as part of our analysis where there is no obvious evidence of record to support them.

This [c]ourt correctly applied th[e *Wexler*] factors in denying Appellant's [p]etition[s]. The Commonwealth had plea deals and admissions from Appellant. Appellant also committed and admitted to numerous crimes, two years apart, with a parole violation between them. While, it has been approximately twenty-three (23) years since the first charges were brought against [ ] Appellant, Appellant admitted guilt in sixteen (16) different serious criminal cases from 2001, which included felonies and crimes that posed a real danger to the public.

In Appellant's Petitions for Expungement, Appellant stated that "[Appellant] has been caused to suffer embarrassment and irreparable harm and loss of job opportunities." [*see* Petition for Expungement, [CP-15-]0002795-2001, *et al*]. However, Appellant fails to state a specific event or reason for how these files existing on her record have led to this embarrassment, harm[,] or loss of job opportunities. While a criminal record can make access to job opportunities more limited, such vague reasoning to expunge would be so widely applicable as to defeat the purpose and intent of Pa.R.Crim.P. 790, *et al.*

Therefore, in consideration of Appellant's argument for granting expungement, the prior likelihood of the success of the Commonwealth's charges against Appellant, the admission of guilt and seriousness of the crimes committed by Appellant, and the balancing factors of *Wexler*, this Court did not err in denying Appellant's request for expungement.

Amended Plea Court Opinion, 2/27/25, 6-7.

Appellant initially asserts that the plea court improperly shifted the burden of proof for the expungement requests, contrary to *Wexler*, and improperly required her to offer specific proof of harm caused by her arrest record. *See* Appellant's Brief, 17-19. She alleges that *Wexler* placed a "heavy burden" on the Commonwealth in order to oppose her expungement requests. Appellant's Brief, 17 ("the Commonwealth bears the heavy burden to present the Court with 'compelling evidence [which] justif[ies] the retention of [a petitioner's] arrest records'"), *citing Wexler*, 431 A.2d at 879. She also

notes that that she did not have a burden to offer specific instances of harm caused by her arrest record. **See** Appellant's Brief, 17-18, **citing Commonwealth v. Drummond**, 694 A.2d 1111, 1114 n.2 (Pa. Super. 1997) ("[The] petitioner is not required to offer specific instances of harm caused by an arrest record."). She alleges that the plea court's denial of her petition based on a "vague reasoning" on her part was contrary to the "intended remedial impact" of the expungement statute that should have been construed "liberally" in her favor and was proof of an improper shifting of the burden of proof below. **See** Appellant's Brief, 18-19, **citing Commonwealth v. Giulian**, 141 A.3d 1262, 1270 (Pa. 2016).

In the next part of the claim, Appellant asserts that the plea court "improperly credited … insufficient justification" by the Commonwealth in order to deny her petitions. Appellant's Brief, 19-21. As for the alleged "insufficient justification," she alludes to statements by the Commonwealth at the expungement hearing to suggest that it only wished to retain her criminal record with the non-conviction charges at issue in order to "keep the conviction[s] in context" because "the nature of [her] criminal history [was] significant." **Id.** at 20 & n.24, **citing** N.T. Expungement Hearing, 8/7/24, 8. She asserts that the plea court, upon considering her expungement petitions, should have considered more than "just the number of records" at issue and alleges that she was "likely to suffer far more reputational harm based on her *sixty-four* non-conviction charges rather than her sixteen convictions." **Id.** at 20 (emphasis in original).

In the last part of her claim, Appellant alleges that the plea court improperly considered guilt for some of her charges (*i.e.*, the offenses she pleaded guilty to) as evidence of her guilt as to all of the charges at issue in her expungement petition for purposes of the first factor in the **Wexler** test addressing the strength of the Commonwealth's cases against her. **See** Appellant's Brief, 21-23. She asserts that the "sole evidence" introduced by the Commonwealth at the expungement hearing, her criminal record, only "reiterate[d] the criminal charges that ha[d] been filed against" her, and that the plea court abused its discretion and erred as a matter of law by determining that, based on the "limited showing" by the Commonwealth, there was a "prior likelihood of the success of the Commonwealth's charges against" her. **Id.** at 22-23. We will address Appellant's points *seriatim*.

In the first part of her claim, Appellant's citation to **Wexler** to suggest that the Commonwealth had a "heavy burden" to justify the retention of her non-conviction arrest records is – at a minimum – misleading. In **Wexler**, the trial court refused to expunge the arrest records of two defendants who were married because the arrests were lawful and the defendants had been held over for trial after a preliminary hearing. After those events, the charges against the Wexlers were *nolle prossed* based upon the district attorney's conclusion that their actions did not support convictions on the pending charges. Additionally, at the expungement hearing, the Commonwealth admitted that it dropped the cases against the Wexlers because it could not prove they were guilty beyond a reasonable doubt. Our Supreme Court

stated, "We believe **this fact**, places a **heavy burden** upon the Commonwealth to present compelling evidence justifying the retention of Mr. and Mrs. Wexler's arrest records." **Wexler**, 431 A.2d at 880 (emphasis added). The fact that created the "heavy burden" in **Wexler** was the district attorney's "confession that he would be unable to sustain his burden of proof at trial." 431 A.2d at 880.

In the instant case, the record contains no confession by the Commonwealth similar to the one made in **Wexler**. By asserting that the Commonwealth had a "heavy burden" for justifying expungement in the instant cases while only quoting part of the Supreme Court's statement about a "heavy burden" in **Wexler** out of context, Appellant overstates her position. **Wexler** held that the Commonwealth must bear the burden of justifying why the arrest record should not be expunged "if the Commonwealth does not bear its burden of proof beyond a reasonable doubt" at trial "or admits that it is unable to bear its burden of proof." 431 A.2d at 880. While there was no "heavy burden" here, the burden of justifying the retention of Appellant's non-conviction arrest records remained with the Commonwealth. **See A.M.R.**, 887 A.2d at 1269 ("when a charge is withdrawn or *nolle prosequied*, the burden is *always* upon the Commonwealth to demonstrate why an arrest record should be retained.") (emphasis in original).

After reviewing the plea court's explanation of its alternate reasoning for denying the petitions at issue based on the **Wexler** factors, we do not find record support for Appellant's assertion that the plea court's denial of her

petitions occurred as a result of an improper shifting of burdens. The court merely remarked that Appellant "failed to state a specific event or reason for how [her non-conviction arrest] files existing on her [criminal] record have led to [ ] embarrassment, harm[,] or job loss opportunities," and then referred to Appellant having only "vague reasoning" on this point. Amended Plea Court Opinion, 2/27/25, 7. The plea court's indisputably correct description of the record, noting Appellant's failure to demonstrate any harm caused by the existence of her non-conviction arrest records at issue, was neither an improper burden shift nor erroneous consideration of an improper factor. Indeed, we have previously stated: "If the petitioner does not show great harm or prejudice by retention of the records, such a showing may be considered in a balancing test, but the ultimate burden of proof and persuasion is upon the Commonwealth." *Commonwealth v. McKee*, 516 A.2d 6, 9 (Pa. Super. 1986). Though Appellant is correct that she was not obligated to offer specific evidence of harm caused by her arrest record, the court's reference about an absence of evidence of that harm was a proper consideration pursuant to *McKee*.

In the second subpart of this claim, Appellant suggests that the Commonwealth failed to assert "anything more than its interest in accurate records" as its justification for denying expungement and that alone was insufficient to meet its burden at the expungement hearing. Appellant's Brief, 19-21. Appellant's argument to that effect does not fully encapsulate the position made below by the Commonwealth. The Commonwealth noted an

interest in maintaining the non-conviction records "to keep the convictions themselves in context," N.T. Expungement Hearing, 8/7/24, 6, but that was not the full extent of the Commonwealth's rationale for expungement denial. The Commonwealth also cited the lack of evidence of any adverse effects of the non-conviction arrest records on Appellant's "employment history." **Id.** at 7 ("The employment history you have had no evidence of."); *see also id.* ("The specific adverse consequences an individual may encounter should the petition for expungement be denied, we have heard none of these.").

Principally, the Commonwealth made a convincing argument that the non-conviction arrest records would have no apparent adverse effect on Appellant because – in any event – her reputation would already be substantially impaired by the various guilty pleas to the lead offenses in all of the cases before us:

> Any type of issues with employment, personal life[,] or, as the petitions say, embarrassment due to the nature of the crimes … that all would come from the … convictions from burglary and not from the cases that were dismissed or withdrawn. So any specific consequences, adverse consequences would come from a conviction, which are legally not entitled to be expunged because they do not fit into the expungement statute at this time.

N.T. Expungement Hearing, 8/7/24, 7-8.

Here, we do not regard our caselaw addressing *Wexler* as requiring a trial court to forgo consideration of the *Wexler* factors when the Commonwealth initially fails to provide sufficient, compelling reasons for retention of a defendant's criminal record. As we noted in *McKee*, the *Wexler*

factors, themselves, "serve as guidance to the court in determining whether the Commonwealth has met its burden." **McKee**, 516 A.2d at 9. The Commonwealth reviewed the five enumerated factors and argued three factors in its favor: the interest in maintaining the records at issue to give context to Appellant's conviction records; the lack of any information as to Appellant's employment history; and the lack of specific adverse consequences that Appellant would endure should expunction be denied. The plea court's explanation of its denial of the expungement petitions based on the **Wexler** balancing factors appear to reflect an acceptance of the Commonwealth's arguments from below and we do not find an abuse of discretion in those respects.

We are persuaded that the Commonwealth met its burden for justifying the denial of expungement because the circumstances of Appellant's cases do not suggest that she would be relieved of any specific adverse consequences with the grant of her petitions.[8] We have previously noted that expungement of various non-conviction charges will not erase the stigma that attaches to a

---

[8] On this point, Appellant's suggestion that the Supreme Court of Pennsylvania's recent opinion in **Commonwealth v. Berry**, 323 A.3d 641 (Pa. 2024), stands for the proposition that "non-conviction arrests are 'inadmissible and irrelevant in nearly every criminal law context,'" Appellant's Reply Brief, 8, is particularly inapt. The issue in **Berry** was whether a sentencing court could consider arrests that "did not result either in juvenile adjudications or adult convictions." **Berry**, 323 A.3d at 643. The Supreme Court determined that such "prior arrests are not probative at a sentencing hearing and *are not otherwise relevant to the factors that are central to the sentencing determination*." **Id.** at 651 (emphasis added). Here, each of the arrests at issue resulted in a conviction in some form via Appellant's guilty pleas.

convicted felon. *See Commonwealth v. Wallace*, 97 A.3d 310, 381 (Pa. 2014) ("Though an expungement of some of Petitioner's charges that did not end in convictions would shorten the length of his record, Petitioner will still have these convictions as a part of his criminal history, and an expungement of other charges will not erase the stigma that follows a convicted felon."). Appellant's stated reason for expungement in her petition referenced "embarrassment and irreparable harm and loss of job opportunities" as a result of "these arrests and subsequent photographing and fingerprinting." Petitions for Expungement, 3/22/24, 1-2. In the instant cases, any photographing and fingerprinting of Appellant would still remain of public record based on the various convictions that resulted from Appellant's guilty pleas. Where Appellant pleaded guilty to the lead offenses in each of the underlying criminal matters, including, *inter alia*, twelve convictions for burglary, there was little reason for the plea court to believe that Appellant's non-conviction arrest records in the same cases were causing her any more embarrassment, harm, and job opportunity difficulties that were not already the result of her conviction records. The factors cited by the Commonwealth would have properly weighed in favor of denying Appellant's petitions had the plea court properly applied the *Wexler* balancing test.

In the last subpart of the instant claim, Appellant argues that, in denying her expungement petitions, the plea court improperly considered her guilt for the charges to which she pleaded guilty as evidence of her guilt with respect to the charges addressed in her petitions that did not result in convictions.

*See* Appellant's Brief, 21-23. In support of this argument, she directs us to the plea court's reference in its opinion to "the prior likelihood of the success of the Commonwealth's charges against" her and addresses the fact that the Commonwealth moved a copy of her criminal record into the evidentiary record at the expungement hearing. *Id.* at 23, citing Amended Plea Court Opinion, 2/27/25, 7.

The court's reference to a "likelihood of the success" on prosecutions for the charges at issues in the expungement petitions appears to be a reference to the fact that the plea court was under the impression that the non-conviction charges were only dismissed as a result of a plea agreement rather than a request for *nolle prosequi* on those charges, given its original application of *Lutz*. While we did not agree with the plea court that *Lutz* could be applied in the absence of "clear and convincing evidence" of the existence of a plea agreement based on the limited record before us, we pointed out above that there were some notable factors that suggested or hinted at the existence of plea agreement for the dismissal of the charges at issues even though *Wexler* should have been applied. To the extent that the plea court improperly assessed the "strength of the Commonwealth's case" factor in the *Wexler* balancing test, we do not find that error rises to an abuse of discretion necessary for remand, especially in light of the other applicable factors.

Here, the Commonwealth did not make any argument as to the "strength of [its] case" factor at the expungement hearing. *See* N.T.

Expungement Hearing, 8/7/21 6 (the Commonwealth: "Going through one by one, the strength of the Commonwealth's case against an individual, we have no argument on that."). In response to the preceding subpart of this claim, we already held that the factors that were addressed by the Commonwealth at the hearing, including the lack of adverse effects to Appellant's life and job opportunities arising from denial of expungement, weighed in favor of the retention of Appellant's non-conviction arrest records and the denial of her petitions. As the consideration of the first *Wexler* factor does not change our assessment of the balancing test as a whole, we conclude that the plea court did not abuse its discretion in denying the expungement petitions, although we do so for reasons other than those cited by the trial court.[9]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/12/2025

---

[9] As we noted above, "it is a well-settled doctrine in this Commonwealth that a trial court can be affirmed on any valid basis appearing of record." *T.P.*, 78 A.3d at 1170.